## TOUTON, S.A.

v.

## M.V. RIZCUN TRADER, et al.

Civil Action No. 97–2058.

United States District Court,
E.D. Pennsylvania.

July 14, 1998.

Edward V. Cattell, Jr., Hollstein, Keating, Cattell, Johnson & Goldstein, P.C., Philadelphia, PA, for Phibro Commodities, Touton, S.A.

Alfred J. Kuffler, Palmer, Biezup & Henderson, Philadelphia, PA, for M.V. Rizcun Trader, Latif Maritime Ltd.

Michael P. Zipfel, Rawle & Henderson, Philadelphia, PA, for Winston Shipping Corp.

### OPINION AND ORDER

HART, United States Magistrate Judge.

I. *Introduction*

This matter concerns a dispute arising from damage to a shipment of cocoa from the Ivory Coast to Philadelphia. The parties are Touton, S.A. ("Touton"), a French corporation dealing in cocoa; Latif Maritime, Ltd. ("Latif"), owner of the M.V. Rizcun Trader; and Winston Shipping Corporation ("Winston"), the ship's charterer. A detailed ver-

sion of the facts can be found in this Court's Opinion and Order of April 24, 1998, in which we ordered a stay of these proceedings pending arbitration in London, based on an agreement to arbitrate contained in a Liner Booking Note between Touton and Winston. Today, however, the Court grants Touton's motion to vacate its earlier order, lift the stay, and restore this matter to the Court's active docket.

## II. Background

### A. The Filing of the Complaint

Phibro Commodities, which had contracted to purchase the shipment of cocoa from Touton, filed this action on March 21, 1997. At the same time, Phibro moved for expedited discovery to preserve certain evidence. Touton, originally a defendant in the action, became the plaintiff when it agreed to retain title to the cargo.

On March 26, 1997, Judge Marjorie O. Rendell granted the expedited discovery, and refused to dismiss the action. She specified, however, that her ruling was limited to the issue of whether limited discovery was necessary to perpetuate testimony, and did not express any opinion on the forum issues raised by the defendants.

Touton filed an amended complaint on April 10, 1997, and served it upon Latif and Winston. Winston answered the amended complaint on October 29, 1997. In its answer, Winston asserted the right to arbitrate.

### B. Winston's Motion to Stay

On December 11, 1997, Winston filed a Motion to Stay Proceedings Pending Arbitration. Touton and Latif both opposed Winston's Motion to Stay, arguing that (a) the dispute was not subject to arbitration; and (b) even if it were, Winston had waived its right to arbitration by its delay in seeking a stay. They pointed out that Winston could have sought a stay at the same time it filed its Answer, on October 29, 1997, or on any date after April 10, 1997, when the Amended Complaint was filed. Instead, it waited until December 11, 1997.

Touton and Latif also argued that they were prejudiced by Winston's delay, in that Winston had access to material Touton and Latif exchanged in discovery. Touton argued, as well, that it was prejudiced by the fact that Winston raised a demurrage issue in its counterclaim, for which adequate discovery could not be had in arbitration.

This Court held oral argument on Winston's Motion to Stay on April 8, 1998. Early in the argument, counsel for Touton expressed concern that Winston might prevail on its Motion to Stay these proceedings, only to turn around in London and argue that the very arbitration it was now seeking was time barred because of Touton's failure to commence arbitration within the applicable limitations period. As a result, the following colloquy took place:

> COUNSEL FOR TOUTON: One of the concerns we have is the potential of a plea on the part of Winston of time barring in London.... So [for Touton to agree to arbitrate] they would have to agree they will not raise time barring so that we're not prejudiced by the fact that, again, they haven't commenced an arbitration in a timely fashion so that we would not be prejudiced by the fact that –

> THE COURT: Well, I mean, I don't pretend to understand what they do over in London. It would seem to me that if I'm sitting over there as a London arbitrator and this case is here because the lawsuit in the United States has been stayed, it wouldn't sound very good to me as a neutral to hear them now, who want it stayed, to now come in and say well, ... you can't proceed because you've waited too long....

> COUNSEL FOR TOUTON: Your Honor, you share my sentiments exactly but it has happened in cases.

> COUNSEL FOR WINSTON: Your Honor, I can state for the record that we are well within our rights to commence arbitration as is [Touton] to defend one. There is absolutely no time bar issue at this state in the proceedings that would prejudice any party.

> THE COURT: I didn't think there would be.

COUNSEL FOR WINSTON: Absolutely not.

Transcript of April 8, 1998 Oral Argument in Motion to Stay ["Stay Motion Transcript"] at pp. 37–38. (Bracketed material added .)

Because of this colloquy, the Court assumed that time bar would not be an issue, and that if Winston's motion were granted, both Touton's claim and Winston's counterclaim would be heard on the merits by the London arbitrators.

As it turned out, however, the Court was completely wrong. As soon as our Opinion issued, Winston's London counsel took the position that Touton's right to demand arbitration had expired just six days after our April 8 oral argument, and ten days *before* we issued our Opinion and Order granting the stay. In short, Winston now claimed that by the time we ordered the case stayed for arbitration, Touton had already blown the statute of limitations for initiating such a proceeding.[1] Not surprisingly, Touton (joined by Latif) promptly filed the present Motion to Vacate the Stay and restore this case to the Court's active docket.

### III. *Discussion*

In our Order and Opinion granting the Motion to Stay, we noted that waiver had been found in cases involving delays similar to Winston's, or even shorter. Order and Opinion at 11, citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, supra at 980 F.2d at 925; *J.D. Fegely, Inc. v. Kline Iron & Steel Co.*, supra; *Graig Shipping Co. v. Midland Overseas Shipping Corporation*, 259 F.Supp. 929 (S.D.N.Y.1966); *Cereal Mangimi v. M/T Vall Star*, 1978 AMC 852 (E.D.Va., February 7, 1978). We concluded, however, that delay alone was not determinative and that waiver would not be found so long as Winston's delay in seeking the Stay did not prejudice Latif or Touton. Order and Opinion at 11–15. We found that Winston's actions were

not inconsistent with its right to demand arbitration. *Id.* at 13–15. We also declined to accept Touton's and Latif's arguments that they were prejudiced by Winston's acts. *Id.* at 15–18.

It is an unavoidable fact that counsel for Winston represented to this Court on April 8, 1998 that time bar was not an issue affecting the commencement of arbitration. Stay Motion Transcript at 37–38. It is also clear that Winston subsequently maintained that arbitration of Touton's claim was precluded by a limitations period that expired only six days later, and prior to the date of the Court's Order granting the stay.

While it may be true, in the most technical way, that the limitations period had not yet expired on the day of oral argument, we find that counsel's representations on the record, particularly in view of the context in which they were made, were both inconsistent with Winston's ultimate position on this issue, as well as misleading both to opposing counsel and the Court. We hasten to point out, however, that we ascribe absolutely no improper motive to Winston's United States counsel. We fully accept her representation that she realized only after oral argument that the statute of limitations was about to run (in Winston's view), and that her client would press this point before the arbitrators. That, however, does not detract from the seriousness of the misrepresentation.

Nor can the Court excuse Winston's decision not to correct the record as soon as it realized that we were flying under false colors. It is clear that Winston had decided to raise the statute of limitations issue well before it received this Court's April 24, 1998 opinion. Indeed, United States counsel for Winston openly conceded during argument on the present Motion to Vacate that she would never have spoken as she did on April 8, had she known of her client's true intentions concerning the statute of limitations

---

1. Winston first claimed that the statute of limitations actually ran on April 9, 1998, the very day after oral argument. It has since modified that position, but only because of London court holidays that it claims tolled the statute until April 14, 1998. Winston has also gone ahead and appointed its arbitrator for the London proceedings (each side appoints one arbitrator and these

two appoint a third), but has expressly reserved the right to raise the time bar and, therefore, not reach the merits of Touton's claim. Its own counterclaim, of course, would also not be heard, but Winston believes that there is a longer statute of limitations for this claim, so that a separate case regarding the counterclaim could be commenced by Winston at some later date.

issue. However, Winston did not notify the Court even after learning these facts, apparently because of a belief on its part that such information would not be relevant to the Court's decision. This silence was completely unacceptable.

At the argument on April 8, considerable time was spent discussing whether Touton would be prejudiced by having to submit its dispute to arbitration many months after the present lawsuit was filed. Moreover, Touton's counsel specifically raised, as an example of prejudice, the possibility that the arbitration statute of limitations may have run. It should have been obvious to Winston that the Court would have viewed the prejudice issue as much more significant, had it known that in less than a week Touton would risk the ultimate prejudice—dismissal of its claim.

Winston now cites to the Court a number of cases in which defendants successfully stayed District Court proceedings, only to then raise statute of limitations issues in arbitration. It argues that, as a defendant, it had no responsibility to notify the plaintiff that the statute was about to run; and it brings to the Court's attention specific cases which have so held, in the very context of ruling upon a request to stay. *Ilva (USA), Inc. v. M/V Alexander's Daring,* 1993 AMC 1771 (E.D.La.1993); *Nissho Iwai American Corp. v. M/V Sea Bridge,* 1991 AMC 2070, 1991 WL 182117 (D.Md.1991).

What Winston fails to realize, however, is that in both *Ilva* and *Nissho,* plaintiff was dangerously close to tripping over the arbitration statute of limitations even before it filed its District Court lawsuit. In fact, in one of the cases the arbitration statute may have run *before* court litigation commenced. Not surprisingly, therefore, we find warnings from those courts that plaintiffs with arguably arbitrable claims ought not be permitted to sample the waters of the District Court while, at the same time, enjoying a hiatus from a fast approaching filing deadline in arbitration. But that is hardly this case. When Phibro filed suit on March 21, 1997, the arbitration statute of limitations not only had not run—it had not even started! That is because the filing period for arbitration is, according to Winston, one year from the date

on which the cargo at issue is unloaded; and Phibro had not even waited until unloading was finished before suing Winston for damage to its cocoa.

■ With the now-complete record of this case finally before the Court, we have little trouble concluding that Touton has suffered serious prejudice as a result of Winston's conduct in this matter. And, as discussed above, it is the presence or absence of prejudice that is central in determining whether a party has waived its right to arbitration. *PaineWebber Incorporated v. Faragalli,* 61 F.3d 1063 (3d Cir.1995); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 925 (3d Cir.1992); *J.D. Fegely, Inc. v. Kline Iron & Steel Company, Inc.,* 1989 WL 71549 at *2 (E.D. Pa., June 27, 1989).

■ Also important are actions the moving party took that were inconsistent with an intent to seek arbitration. *Hoxworth v. Blinder, supra,* at 980 F.2d at 925–26; *United States for Use of Duo Metal and Iron Works, Inc. v. S.T.C. Construction Company,* 472 F.Supp. 1023, 1024 (E.D.Pa.1979); *also see, Bunge Edible Oil Corporation v. M/V Torm Rask,* 756 F.Supp. 261 (E.D.La.1991); *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 640 F.Supp. 882 (S.D.N.Y.1986); *Graig Shipping Co. v. Midland Overseas Shipping Corp, supra; Cereal Mangimi v. M/T Vall Star, supra.*

■ Taking into consideration that Touton had more than a full year remaining to seek arbitration of its claim against Winston on the date Phibro filed the present suit, coupled with the fact that Winston let most of this year elapse before filing its Motion to Stay, then let all of it effectively elapse by the time of oral argument, while simultaneously advising both the Court and its opponents that "there is absolutely no time bar issue at this state in the proceedings that would prejudice any party," the Court now believes that Winston *has* acted in a manner inconsistent with preserving its right to arbitrate, *has,* by the totality of its conduct, prejudiced Touton's right to have its claim heard on the merits, and, therefore *has* waived its right to have the present proceedings stayed

## IV. *Conclusion*

For the foregoing reasons, the Court now enters the following

### ORDER

AND NOW, this 13 day of July, 1998, Touton's Motion to Vacate this Court's Order of April 24, 1998, Lift the Stay, and Restore This Matter to the Court's Active Docket is GRANTED. This Court's Order of April 24, 1998 is VACATED, and this case is ORDERED returned to the Court's active docket. All parties are to bear their own costs in connection with this motion and the Motion to Stay.